IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EDWARD SARTORIS, | : | Civil No. 3:21-cv-1646 |
| | : | |
| Plaintiff | : | (Judge Mariani) |
| | : | |
| v. | : | |
| | : | |
| WARDEN HAIDLE, *et al.*, | : | |
| | : | |
| Defendants | : | |

## MEMORANDUM

Plaintiff Edward Sartoris ("Sartoris"), an inmate confined at the Monroe County

Correctional Facility, in Stroudsburg, Pennsylvania ("MCCF"), initiated this civil rights action

pursuant to 42 U.S.C. § 1983. (Doc. 1).  The matter is proceeding via an amended

complaint. (Doc. 29).  Named as Defendants are Warden Haidle, Deputy Warden McCoy,

and Sergeant Zito.  Presently before the Court is Defendants' Rule 12(b) motion to partially

dismiss the amended complaint.  (Doc. 34).  For the reasons set forth below, the Court will

grant the motion.

## I.   Allegations of the Amended Complaint

On July 10, 2020, staff at the Monroe County Correctional Facility placed Sartoris on

a suicide watch, in the facility's B-Unit. (Doc. 29 ¶¶ 8, 11).  Sartoris alleges that he was

placed on a suicide watch because he was suspected of hoarding over forty (40) pills.  (*Id.* ¶

8).  Sartoris claims that he did not have access to that number of pills because, as of July

10, 2020, he was in the MCCF for less than forty-five (45) days and would not have been able to accumulate more than forty (40) pills. (*Id.* ¶¶ 8-10).

When Sartoris was placed in the B-Unit, his cell allegedly had no running water. (*Id.* ¶ 11). Sartoris complained to an officer about the lack of water, he explained that he was diabetic and had excessive thirst, and he informed the officer that his meals were not diabetic compliant. (*Id.*). He also claims that an unidentified officer prevented a nurse from administering his medications and turning on the water. (*Id.*). On July 11, 2020, Sartoris asked for the water to be turned on and for administration of his medications. (*Id.* ¶ 12). Sartoris got no relief. (*Id.*). At 6:00 p.m. on July 11, 2020, Sartoris asked Defendant Zito for water, informed him that he was diabetic and had high blood pressure, and was afraid he might suffer a heart attack. (*Id.* ¶ 13). Defendant Zito allegedly stated, "I'm going to make sure you have a heart attack and die." (*Id.*). "At some point later," Sartoris suffered a heart attack in his cell and was revived by nurse Vargas and officer McKuhn. (*Id.* ¶ 15). Sartoris was transported to an outside hospital, where he remained for a few days. (*Id.* ¶¶ 15-17). Upon his return to the MCCF, he was placed back on suicide watch in B-10 cell. (*Id.* ¶ 19).

Sartoris utilized the prison's inmate grievance system. (*Id.* ¶¶ 21-24). The Warden responded to his grievance and stated that there was no record of the incident complained of in the grievance. (*Id.* ¶¶ 23, 24).

Sartoris alleges that Warden Haidle is legally responsible for the operation of the prison and that Deputy Warden McCoy oversees the security of the prison and safety of all inmates. (*Id.* ¶¶ 4, 5).

## II.    Legal Standard

A complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(6), if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The plaintiff must aver "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

"Though a complaint 'does not need detailed factual allegations, . . . a formulaic recitation of the elements of a cause of action will not do.'" *DelRio-Mocci v. Connolly Prop. Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 555). In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) (internal citations and quotation marks omitted). A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v.*

*Abbott Laboratories*, 707 F.3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation

marks omitted).

> *Twombly* and *Iqbal* require [a district court] to take the following three steps to
> determine the sufficiency of a complaint:  First, the court must take note of the
> elements a plaintiff must plead to state a claim.  Second, the court should
> identify allegations that, because they are no more than conclusions, are not
> entitled to the assumption of truth.  Finally, where there are well-pleaded
> factual allegations, a court should assume their veracity and then determine
> whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere

possibility of misconduct, the complaint has alleged – but it has not show[n] – that the

pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks

omitted).  This "plausibility" determination will be a "context-specific task that requires the

reviewing court to draw on its judicial experience and common sense." *Id.*

However, even "if a complaint is subject to Rule 12(b)(6) dismissal, a district court

must permit a curative amendment unless such an amendment would be inequitable or

futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

> [E]ven when plaintiff does not seek leave to amend his complaint after a
> defendant moves to dismiss it, unless the district court finds that amendment
> would be inequitable or futile, the court must inform the plaintiff that he or she
> has leave to amend the complaint within a set period of time.

*Id.*

## III.   Discussion

### A.   Official Capacity Claims

Sartoris sues the three individual Defendants in their individual and official capacities. (Doc. 29 ¶ 7). Sartoris does not name Monroe County as a Defendant, but he does sue each Defendant in his official capacity, which is akin to suing the municipality itself. *See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690 n.55 (1978).

To assert a Section 1983 claim against Monroe County by way of an official capacity claim against a county employee, Sartoris must identify a policy or custom fairly attributable to the municipality that caused him constitutional injury. *Id.* at 690-91. The amended complaint does not mention the existence of a policy or custom at the Monroe County Correctional Facility. Absent such allegations, Sartoris has failed to plausibly plead facts showing that the named Defendants are decision-makers endowed with authority to promulgate or establish an official custom or policy.[1]

As to Defendant Haidle, Sartoris alleges he "is legally responsible for the operation of MCCF and for the welfare of all the inmates in that prison." (Doc. 29 ¶ 4). With respect

---

[1]    In his brief in opposition to Defendants' partial motion to dismiss, Sartoris references very general policies and practices at the MCCF. (Doc. 44-1). He alleges that there are "numerous policie[ ]s and practices which occur automatically because they are ingrained into unconsciousness" and that the County's hiring process is deficient. (Doc. 44-1, p. 7-8, 10). "Although a court on a motion to dismiss ordinarily 'must accept the allegations in the complaint as true,' it is not compelled to accept assertions in a brief without support in the pleadings." *Chavarriaga v. New Jersey Dep't of Corr.*, 806 F.3d 210, 232 (3d Cir. 2015) (quoting *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013)). "After all, a brief is not a pleading." *Id.* Thus, the Court does not accept the factual assertions in Sartoris' brief that do not appear in his amended complaint.

to Deputy Warden McCoy, Sartoris alleges that he "is charged with security and the safety of all prisoners at MCCF." (*Id.* ¶ 5).  Neither allegation is sufficient to state an official capacity claim against Haidle or McCoy.  The allegations are vague and sound merely in *respondeat superior* liability, and they do not show any type of decision-making authority or promulgation of an unconstitutional policy.  Although Sartoris does not so specify, it can be inferred that Haidle and McCoy, as Warden and Deputy Warden, had decision-making authority to establish policy at MCCF and could be responsible for creating or adopting a policy.  However, the amended complaint does not identify or reference *any* MCCF policy.

As to Defendant Zito, Sartoris alleges that he "held the rank of sergeant."  (*Id.* ¶ 6).  Again, these allegations do not demonstrate that Defendant Zito had any decision-making authority to adopt or create an unconstitutional municipal policy or that he in fact adopted or created such a policy.

The deficient official capacity claims against Defendants Haidle, McCoy, and Zito will be dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

**B.    Lack of Personal Involvement of Defendants Haidle and McCoy**

Defendants next seek to dismiss the claims against Warden Haidle and Deputy Warden McCoy based on a lack of personal involvement.  (Doc. 35, pp. 5-6).

Section 1983 of Title 42 of the United States Code offers private citizens a cause of action for violations of federal law by state officials.  *See* 42 U.S.C. § 1983.  The statute provides, in pertinent part, as follows:

6

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

*Id.*; *see also Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002); *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996).  To state a claim under § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

Individual liability will be imposed under Section 1983 only if the state actor played an "affirmative part" in the alleged misconduct.  *See Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998)).  Liability "cannot be predicated solely on the operation of respondeat superior." *Id.*  In other words, defendants in Section 1983 civil rights actions "must have personal involvement in the alleged wrongs . . . shown through allegations of personal direction or of actual knowledge and acquiescence." *Atkinson v. Taylor*, 316 F.3d 257, 271 (3d Cir. 2003); *Rode*, 845 F.2d at 1207-08.  A plaintiff must establish the particulars of conduct, time, place, and the person responsible. *Evancho*, 423 F.3d at 354; *Rode*, 845 F.2d at 1207-08.  When a plaintiff merely hypothesizes that an individual defendant may have had knowledge of, or personal involvement in, the deprivation of his or her rights, individual liability will not follow.

*Atkinson*, 316 F.3d at 271; *Rode*, 845 F.2d at 1207-08.  A claim of a constitutional

deprivation cannot be premised merely on the fact that the named defendant was the prison

warden, or a prison supervisor, when the incidents set forth in the complaint occurred.  *See*

*Rode*, 845 F.2d at 1207.

It appears that Sartoris seeks to hold Warden Haidle and Deputy Warden McCoy

liable based upon their supervisory positions.  As stated, Sartoris asserts that Warden

Haidle is responsible for the operation of the Monroe County Correctional Facility and the

well-being of all inmates.  (Doc. 29 ¶ 4).  He further asserts the Deputy Warden McCoy is

responsible for the safety of all prisoners and security within the prison.  (*Id.* ¶ 5).

Supervisors, however, "may not be held liable for the unconstitutional conduct of their

subordinates under a theory of *respondeat superior.*"  *Iqbal*, 556 U.S. at 676.  With respect

to Haidle and McCoy's supervisory roles of Warden and Deputy Warden, "there are two

theories of supervisory liability, one under which supervisors can be liable if they

established and maintained a policy, practice or custom which directly caused the

constitutional harm, and another under which they can be liable if they participated in

violating plaintiff's rights, directed others to violate them, or, as the persons in charge, had

knowledge of and acquiesced in their subordinates' violations."  *Santiago v. Warminster*

*Twp.*, 629 F.3d 121, 129 n.5 (3d Cir. 2010) (quotation and alteration marks omitted).

Sartoris fails to set forth such allegations, and liability cannot be imposed on Defendants

Haidle and McCoy based on their positions and duties as supervisors.  Accordingly, insofar

8

as Sartoris' claims against Defendants Haidle and McCoy rely on a *respondeat superior* theory of liability, they are entitled to dismissal.

It also appears that Sartoris seeks to hold Defendant Haidle liable based upon his response to a grievance. (Doc. 29 ¶¶ 23, 24). However, the "failure of a prison official to provide a favorable response to an inmate grievance is not a federal constitutional violation." *Flanagan v. Shively*, 783 F. Supp. 922, 931-32 (M.D. Pa. 1992), *aff'd*, 980 F.2d 722 (3d Cir. 1992). Thus, any claims against Defendant Haidle that are premised on his response to a grievance must fail because dissatisfaction with a response to an inmate's grievance does not support a constitutional claim. *See Brooks v. Beard*, 167 F. App'x. 923, 925 (3d Cir. 2006) (holding that allegations that prison officials responded inappropriately to an inmate's later-filed grievances do not establish the involvement of those officials and administrators in the underlying constitutional deprivation); *Alexander v. Gennarini*, 144 F. App'x 924 (3d Cir. 2005) (concluding that involvement in the post-incident grievance process is not a basis for liability).

Based on the above, Defendants' motion to dismiss will be granted based on a lack of personal involvement of Warden Haidle and Deputy Warden McCoy.

IV.   **Leave to Amend**

When a complaint fails to present a prima facie case of liability, district courts must generally grant leave to amend before dismissing the complaint. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002); *Shane v. Fauver*, 213 F.3d 113, 116-17 (3d

9

Cir. 2000).  Specifically, the Third Circuit Court of Appeals has admonished that when a

complaint is subject to dismissal for failure to state a claim, courts should liberally grant

leave to amend "unless such an amendment would be inequitable or futile." *Phillips*, 515

F.3d at 245 (citing *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004)).  The federal rules

allow for liberal amendments in light of the "principle that the purpose of pleading is to

facilitate a proper decision on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962)

(citations and internal quotations omitted).  The above claims against the Defendants are

factually and legally flawed; thus, the Court concludes that granting Sartoris leave to file a

second amended complaint would be futile.  *See Jones v. Unknown D.O.C. Bus Driver &*

*Transp. Crew*, 944 F.3d 478, 483 (3d Cir. 2019) (where an inmate plaintiff "has already had

two chances to tell his story . . . giving him further leave to amend would be futile.")

## V.    Conclusion

For the foregoing reasons, the Court will grant Defendants' motion (Doc. 34) to

partially dismiss the amended complaint.  A separate Order shall issue.

Robert D. Mariani
United States District Judge

Dated: December ___, 2022