**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

EDWARD SARTORIS,            :      Civil No. 3:21-cv-1646
                             :
          Plaintiff        :      (Judge Mariani)
                             :
      v.                 :
                             :
SERGEANT ZITO,          :
                             :
         Defendant     :

## MEMORANDUM

Plaintiff Edward Sartoris ("Sartoris"), an inmate who was housed, at all relevant times, at the Monroe County Correctional Facility, in Stroudsburg, Pennsylvania ("MCCF"), initiated this civil rights action pursuant to 42 U.S.C. § 1983.[1]  (Doc. 1).  The matter is proceeding via an amended complaint.  (Doc. 29).  The sole remaining Defendant is Sergeant Zito.  Presently before the Court is Defendant's motion (Doc. 76) for summary judgment pursuant to Federal Rule of Civil Procedure 56.  For the reasons set forth below, the Court will grant the motion.

---

[1]    Sartoris is currently housed at the State Correctional Institution, Dallas, Pennsylvania.  (Doc. 72).

I.    **Statement of Undisputed Facts**[2]

On May 27, 2020, Sartoris was booked into the Monroe County Correctional Facility after using a stun gun on his wife and stabbing her almost a dozen times.  (Doc. 81 ¶ 1; Doc. 94 ¶ 1).  On October 28, 2022, Sartoris pled guilty in the Monroe County Court of Common Pleas to Flight to Avoid Apprehension/Trial/Punishment.  (*Id.* ¶ 2).

Sartoris' allegations in his amended complaint relate to events that occurred at the MCCF in July 2020, at which time he was a pretrial detainee.  (*Id.* ¶ 3).  During the events described in the amended complaint, Defendant Salvatore Zito was employed at the MCCF as a Sergeant.  (*Id.* ¶ 4).  In that capacity, he supervised correctional officers in various units at the MCCF during his shift.  (*Id.*).

On July 10, 2020, at 8:45 p.m., Defendant Zito was on Sartoris' unit while correctional officers conducted random searches.  (*Id.* ¶ 5).  Defendant Zito asserts that Sartoris stated that he wanted to end his life, whereas Sartoris asserts that "Zito said he would ensure the Plaintiff had a heart attack."  (*Id.* ¶ 6).  In response, Defendant Zito initiated a Level 1 Suicide watch, moved Sartoris to a cell better suited for a suicide watch and informed the PrimeCare Medical Department, the healthcare provider at the MCCF, of

---

[2]   Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried."  LOCAL RULE OF COURT 56.1.  A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues to be tried.  *Id.*  Unless otherwise noted, the factual background herein derives from the parties' Rule 56.1 statement of material facts.  (Docs. 81, 94).

the change.  (*Id.* ¶ 7).  A Level 1 suicide watch is a watch where an inmate is observed by officers approximately every 15 minutes to protect him from harm.  (*Id.* ¶ 8).  The staff documented their 15-minute observations of Sartoris during the watch, noting what he was doing and his physical and mental condition.  (*Id.* ¶ 9).

The watch sheets reflect that Sartoris ate meals, spoke to nurses, took medications, was out for recreation, was reading, watched TV, and was in no apparent distress until his vital signs were taken by a nurse on July 11, 2020, at 7:47 p.m.  (*Id.* ¶ 11).  Sartoris asserts that the watch sheets contain discrepancies and conflicting times.  (Doc. 94 ¶¶ 10, 14-17).

On July 11, 2020, at 8:10 p.m., the PrimeCare Medical Department performed an electrocardiogram ("EKG") on Sartoris and then authorized his transport to the Lehigh Valley Pocono Medical Center Hospital for further evaluation.  (Doc. 81 ¶ 12; Doc. 94 ¶ 12). The watch sheets reflect that Sartoris was back in his cell and returned to his suicide watch status on July 13, 2020.  (*Id.* ¶ 13).  The watch sheets reflect that the staff monitored Sartoris' breathing and documented complaints of pain.  (*Id.* ¶ 14).  The watch sheets reflect that he was seen by the medical department repeatedly, was reading, socializing, watching TV in the dayroom, used the unit phone, and went out for recreation and to shower.  (*Id.* ¶ 15).  The watch sheets reflect that beginning on July 15, the watch was changed from a 15-minute watch to a 30-minute watch.  (*Id.* ¶ 16).  The watch sheets also reflect that Sartoris was placed in Cell B-11 beginning on July 24, 2020, and that the last watch entry was on July 27, 2020.  (*Id.* ¶ 17).

During his incarceration, Sartoris received three meals per day plus beverages. (*Id.* ¶ 18). Sartoris asserts that, as a diabetic, he received inappropriate food. (Doc. 94 ¶ 18). Defendant maintains that Sartoris was not only properly fed and hydrated, on July 26, 2020, he requested a peanut butter & jelly sandwich instead of a baloney sandwich. (Doc. 81¶ 19). Sartoris counters that he requested an orange tray. (Doc. 94 ¶ 19).

PrimeCare Medical, Inc., is a health care provider under contract with Monroe County to provide healthcare to inmates at the MCCF. (Doc. 81 ¶ 20; Doc. 94 ¶ 20). PrimeCare employs nurses and physicians and mental health providers who provide services to the inmate population at the MCCF. (*Id.* ¶ 21). If the PrimeCare staff are unable to provide necessary medical care to an inmate, PrimeCare sends the inmates to hospitals and physicians off-site. (*Id.* ¶ 22). PrimeCare does not share the medical records of an inmate with the correctional staff due to confidentiality laws (HIPAA) unless there is a need to know, such as to warn officers of an inmate's suicidal ideation. (*Id.* ¶ 23).

Defendant Zito is not a healthcare provider and states that he had no knowledge of PrimeCare's diagnosis or what medications it prescribed for Sartoris. (Doc. 81 ¶ 24). Defendant Zito avers that Sartoris' medical records were not shared with him and he had no knowledge that Sartoris had a serious medical need that was allegedly being ignored. (*Id.* ¶¶ 25-26). To the contrary, Zito maintains that the daily care provided by the PrimeCare medical staff to Sartoris showed that Sartoris' medical needs were addressed. (*Id.* ¶ 27). In

4

response, Sartoris contends that every correctional officer was aware of his medical conditions. (Doc. 94 ¶ 24).

The MCCF has a grievance procedure that is described in the inmate handbook. (Doc. 81 ¶ 28). Defendant maintains that Sartoris was given a copy of the inmate handbook when he was first incarcerated at the MCCF, whereas Sartoris alleges that he did not receive a full copy of the inmate handbook and only received 6 pages of the handbook. (Doc. 81 ¶ 29; Doc. 94 ¶ 29). The grievance procedure allows an inmate to make complaints about: (1) the conditions of his confinement; (2) complaints against specific officers relating to their treatment of him or about officers' misbehavior; (3) his dissatisfaction with his medical care; and (4) claims that our officers subjected him to harm or failed to provide him with a proper level of medical care. (Doc. 81 ¶ 31).

The claims in Sartoris' amended complaint are claims that were covered by the MCCF grievance procedure. (*Id.* ¶ 32). Sartoris contends that he submitted grievances for claims that were grievable. (Doc. 94 ¶¶ 31-32). He further contends that the grievance procedure is "real or fictious" and prison supervisors take "months to answer" or lose grievances. (*Id.* ¶¶ 32, 36).

The grievance procedure provides for several levels of review if an inmate is dissatisfied with the response he receives from his grievances. (Doc. 81 ¶ 33). Warden Haidle is the final level of review in the grievance process and all grievances and decisions responding to grievances or grievance appeals are commemorated in writing. (*Id.* ¶ 34).

Defendant maintains that Sartoris did not exhaust his administrative remedies concerning the conduct of Defendant Zito or the policies followed at the MCCF. (*Id.* ¶ 35). He maintains further that if Sartoris had submitted grievances relating to the claims he made in his amended complaint, they would have been investigated and addressed. (*Id.* ¶ 36).

II.   <u>Legal Standard</u>

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact." FED. R. CIV. P. 56(a). "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). Therefore, the non-moving party may not oppose summary judgment simply on the basis of the pleadings, or on conclusory statements that a factual issue exists. *Anderson*, 477 U.S. at 248. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an

adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P.

56(c)(1)(A)-(B).  In evaluating whether summary judgment should be granted, "[t]he court

need consider only the cited materials, but it may consider other materials in the record."

FED. R. CIV. P. 56(c)(3).  "Inferences should be drawn in the light most favorable to the non-

moving party, and where the non-moving party's evidence contradicts the movant's, then

the non-movant's must be taken as true."  *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974

F.2d 1358, 1363 (3d Cir.1992), *cert. denied* 507 U.S. 912 (1993).

However, "facts must be viewed in the light most favorable to the nonmoving party

only if there is a 'genuine' dispute as to those facts."  *Scott v. Harris*, 550 U.S. 372, 380, 127

S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007).  If a party has carried its burden under the

summary judgment rule,

> its opponent must do more than simply show that there is some metaphysical
> doubt as to the material facts.  Where the record taken as a whole could not
> lead a rational trier of fact to find for the nonmoving party, there is no genuine
> issue for trial.  The mere existence of some alleged factual dispute between
> the parties will not defeat an otherwise properly supported motion for
> summary judgment; the requirement is that there be no genuine issue of
> material fact.  When opposing parties tell two different stories, one of which is
> blatantly contradicted by the record, so that no reasonable jury could believe
> it, a court should not adopt that version of the facts for purposes of ruling on a
> motion for summary judgment.

*Id.* (internal quotations, citations, and alterations omitted).

## III.   Discussion

As explained below, Sartoris failed to exhaust his administrative remedies.[3] Therefore, the Court will grant Defendant's motion and enter judgment in his favor.

The Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e *et seq.*, requires prisoners to exhaust available administrative remedies before suing prison officials for alleged constitutional violations. *See id.* § 1997e(a); *Ross v. Blake*, 578 U.S. 632, 639, 642 (2016) (explaining that only "available" remedies must be exhausted). Proper exhaustion is mandatory, even if the inmate is seeking relief—like monetary damages—that cannot be granted by the administrative system. *See Woodford v. Ngo*, 548 U.S. 81, 85 (2006). However, there are situations in which a grievance procedure may be rendered "unavailable" to an inmate, such as when a prison official thwarts an inmate's ability to use it, *Ross*, 578 U.S. at 643-44, when intimidation by means of "serious threats of retaliation and bodily harm" prevent an inmate from filing, *Rinaldi v. United States*, 904 F.3d 257, 266-67 (3d Cir. 2018), or when a prison has "rendered its administrative remedies unavailable… when it failed to timely (by its own procedural rules) respond to [an inmate's] grievance and then repeatedly ignored his follow-up requests for a decision on his claim," *Robinson v.*

---

[3]   On September 28, 2023, the Court issued an Order apprising the parties that it would consider exhaustion in its role as factfinder in accordance with *Paladino v. Newsome*, 885 F.3d 203 (3d Cir. 2018) and *Small v. Camden Cnty.*, 728 F.3d 265 (3d Cir. 2013), and afforded the parties the opportunity to supplement the record with any additional evidence relevant to exhaustion of administrative remedies. (Doc. 92).

*Superintendent Rockview SCI*, 831 F.3d 148, 154 (3d Cir. 2016); *see also Shifflett v. Korszniak*, 934 F.3d 356, 359 (3d Cir. 2019).

Under Third Circuit precedent, "exhaustion is a question of law to be determined by a judge, even if that determination requires the resolution of disputed facts." *Small v. Camden Cnty.*, 728 F.3d 265, 269 (3d Cir. 2013) (citing *Drippe v. Tobelinski*, 604 F.3d 778, 781 (3d Cir. 2010)); *see also Drippe*, 604 F.3d at 781 ("Juries decide cases, not issues of judicial traffic control.  Until the issue of exhaustion is resolved, the court cannot know whether it is to decide the case or the prison authorities are to.") (quoting *Pavey v. Conley*, 544 F.3d 739, 741 (7th Cir. 2008)); *cf. Wilkerson v. United States*, No. 3:13-1499, 2014 WL 1653249, at *9 (M.D. Pa. Apr. 24, 2014) ("[I]f there is a dispute of material fact, the court should conduct a plenary trial on the contested facts prior to making [an exhaustion of administrative remedies] determination.").  "Although the availability of administrative remedies to a prisoner is a question of law, it necessarily involves a factual inquiry." *Small*, 728 F.3d at 271 (citations omitted).

Here, Sartoris has presented no evidence that he properly exhausted his administrative remedies, that he was prevented in any way from exhausting his administrative remedies, or that the MCCF failed to respond to a grievance.  First, in his brief in opposition to Defendant's motion, Sartoris does not present an argument responding to Defendant's failure to exhaust argument.  (*See* Doc. 83, pp. 1-9; Doc. 85).  Attached to his response are two grievances demonstrating a "'normal' turn-around time" for a grievance

9

response. (Doc. 83, pp. 13 ¶ 13, 16-17). These grievances pertain to alleged contaminated water and old windows at the MCCF and address matters not raised against Defendant Zito. (*Id.* at pp. 16-17). As such, Sartoris' brief in opposition offers nothing to counter Defendant's failure to exhaust argument. Second, in his amended complaint, Sartoris alleges that he filed grievances related to his claims, but the grievances "seemed to be cursed." (Doc. 29, pp. 9-10). Sartoris' bald assertion that the grievance process was long or that grievances were unanswered, standing alone, does not carry his burden of proving "that there was some extraordinary reason he was prevented from complying with the statutory mandate." *Davis v. Warman*, 49 F. App'x 365, 368 (3d Cir. 2002). He does not provide any evidence to support a claim that the administrative remedy process was not available to him or that prison officials failed to respond to his grievance. The Court notes that Sartoris has submitted a MCCF inmate request slip dated November 21, 2022, wherein he inquired about the status of an inmate request that was unanswered. (Doc. 88, p. 5). It is incontestable that Sartoris commenced this action in September of 2021, and, as a matter of law, inmates must exhaust any administrative remedies that are available to them before filing a lawsuit in federal court. 42 U.S.C. § 1997e(a); *see also Woodford*, 548 U.S. at 92 (mandating complete exhaustion of all administrative remedies before filing suit); *Rivera v. Pa. Dep't of Corr.*, 388 F. App'x 107, 108 (3d Cir. 2010) ("An inmate must exhaust his administrative remedies prior to filing a civil action in federal court"). Therefore, Sartoris' only evidence of exhaustion confirms that he did not fully and properly exhaust his

administrative remedies prior to filing this lawsuit.  Moreover, although Sartoris was transferred from MCCF to SCI-Dallas, a transfer from one facility to another does not excuse the PLRA's exhaustion requirement, and Sartoris does not advance any argument that administrative exhaustion was rendered futile after his transfer.  *See Williamson v. Wexford Health Sources, Inc.*, 131 F. App'x 888, 890 (3d Cir. 2005) (*per curiam*).

In contrast, Defendant has presented evidence in the form of an affidavit from Warden Haidle confirming that he reviewed Sartoris' file, and Sartoris did not exhaust all of his available MCCF grievance remedies outlined in the inmate handbook.  (Doc. 81-1, pp. 51-52 ¶¶ 2-9).  Allegations without the support of evidence are not sufficient to survive summary judgment.  *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 288-89 (3d Cir. 2018). Therefore, Sartoris' mere allegation that he filed a grievance, and the grievance went unanswered is not sufficient to survive Defendant's motion.

It is undisputed that Sartoris failed to properly exhaust all levels of review provided by the MCCF inmate grievance system.  Instead, Sartoris bypassed the inmate grievance system and proceeded to federal court.  "[I]t is beyond the power of this court—or any other—to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis."  *Nyhuis v. Reno*, 204 F.3d 65, 73 (3d Cir. 2000). Sartoris' course of action is precisely the conduct that the PLRA administrative exhaustion requirement seeks to curtail.  Defendant is entitled to summary judgment based on Sartoris' failure to exhaust administrative remedies.

## IV.    <u>Conclusion</u>

The Court will grant Defendant Zito's motion (Doc. 76) and enter judgment in his

favor.  A separate Order shall issue.


Robert D. Mariani
United States District Judge

Dated: February _____, 2024